UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA TERRY                                    Case No. 14-12274

        Plaintiff,                           Arthur J. Tarnow
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Michael Hluchaniuk
                                               United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 21, 23)**

I.   **PROCEDURAL HISTORY**

    A.   Proceedings in this Court

On June 9, 2014, plaintiff filed the instant suit seeking judicial review of the

Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Arthur J.

Tarnow referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits.  (Dkt. 5).  This matter is before the Court on

cross-motions for summary judgment.  (Dkt. 21, 23).

B.    Administrative Proceedings

Plaintiff filed the instant claims on September 14, 2011, alleging that she became disabled on October 4, 2011.  (Dkt. 12-2, Pg ID 55).  The claim was initially disapproved by the Commissioner on February 3, 2009.  *Id*.  Plaintiff requested a hearing and on August 6, 2012 plaintiff appeared with an attorney before Administrative Law Judge ("ALJ") Richard L. Sasena, who considered the case de novo.  *Id.*  In a decision dated November 29, 2012, the ALJ found that plaintiff was not disabled.  (Dkt. 12-2, Pg ID 55-62).  Plaintiff requested a review of this decision on November 1, 2010.  (Dkt. 12-2, Pg ID 51).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on February 22, 2012, denied plaintiff's request for review.  (Dkt. 12-2, Pg ID 45-50); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1962 and was 46 years of age on the late date insured of December 31, 2008.  (Dkt. 12-2, Pg ID 61, 57).  Plaintiff's past relevant work included work as a housekeeping manager, which was semi-skilled and performed at the light exertional level.  (Dkt. 12-2, Pg ID 61).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 12-2, Pg ID 57).  At step two, the ALJ found that plaintiff's history of kidney stones, varicose veins, and obesity were "severe" within the meaning of the second sequential step.  (Dkt. 12-2, Pg ID 57).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 12-2, Pg ID 57-58).

The ALJ concluded that plaintiff had the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, Claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she requires a sit/stand option after 20 minutes; can

> occasionally climb, balance, stoop, kneel, crouch, or
> crawl, but can never climb ladders; and must avoid all
> exposure to unprotected heights or moving machinery.

(Dkt. 12-2, Pg ID 58). At step four, the ALJ found that plaintiff could not perform

her past relevant work. (Dkt. 12-2, Pg ID 61). At step five, the ALJ denied

plaintiff benefits because she could perform a significant number of jobs available

in the national economy. (Dkt. 12-2, Pg ID 61).

> B.    Plaintiff's Claims of Error

Plaintiff maintains that in light of her ongoing kidney impairments, obesity

and varicose veins, she is unable to perform the physical requirements of jobs at

the level found in the ALJ's RFC. Plaintiff's medical evidence shows a long

history of kidney impairments, with associated pain. Plaintiff's medical records

before and after her onset date of disability, reveal painful kidney problems

including passing kidney stones and uric acid. Despite on-going treatment, these

impairments did not resolve and she complained of regular flank pain. After

ongoing complaints of kidney pain, plaintiff underwent imaging studies on

September 4, 2006. This revealed that plaintiff's kidneys contained multiple

irregular calcifications (about 10) and there was a suggestion of possible staghorn

calculus. (Tr. 443). Further, plaintiff's left kidney also had a small calculus. (Tr.

444). Plaintiff continued to treat for her symptoms following these studies without

relief. On January 7, 2009, in conjunction with her amended onset date of

disability, plaintiff complained of pain that felt like she was passing kidney stones. (Tr. 208).  Shortly thereafter, plaintiff underwent a CT of her abdomen that showed no new significant findings.  (Tr. 228).  A report on February 16, 2009 noted that plaintiff suffered with a long history of nephrolithiasis, recurrent kidney stones, and several calcifications in her pelvis.  (Tr. 207).  Plaintiff was seen again on March 31, 2009 for more kidney-related pain.  (Tr. 206).  It was determined that plaintiff was passing uric acid stones, had continued kidney problems, and had consistent right flank pain. (Tr. 206).

In addition to per painful kidney impairments, plaintiff also suffers from varicose veins in her legs, which cause ongoing pain, and obesity.  As her medical records reveal, and as her doctor noted, plaintiff's varicose veins cause on-going swelling and pain in her legs.  (Tr. 395).  As a result, she is forced to rest and elevate her legs to hip level.  (Tr. 397).  Moreover, according to plaintiff's treating physician, she is unable to sit or stand for more than 2 hours in an 8-hour day and would need to take unscheduled breaks.  (Tr. 397-398).  As a result of these limitations, plaintiff says she is unable to perform work at the "light" exertional level – even with the additional limitations imposed by the ALJ in this case.

Plaintiff contends that the failure of the ALJ to include these limitations in his RFC does not constitute "harmless error."  In reaching a decision, the ALJ has a duty to include those limitations in his Residual Functional Capacity assessment,

which is defined as "the most you can still do despite your limitations."  20 C.F.R. § 416.945.  Thus, in light of the ALJ's failure to properly include plaintiff's bilateral hand limitations, chronic pain symptoms, and limited mobility, plaintiff maintains that the ALJ's RFC finding is inadequate.  And, although the ALJ afforded the plaintiff the option of a sit/stand option, he did not take her need to elevate her legs into consideration.  Furthermore, although plaintiff would have a sit/stand option, according to the Administration's definition of "light" work, she would be still be required to do a good amount of walking and carrying.  As her medical evidence shows, and as her treating physician has reported, plaintiff would be physically unable to meet these demands as a result of her kidney impairments, pain, and varicose veins.

Plaintiff also challenges the ALJ's credibility analysis.  In support of his decision, the ALJ pointed to the fact that there were only a few objective medical records supporting plaintiff's on-going pain complaints and other symptoms.  (Tr. 15).  However, despite the volume of medical appointments, plaintiff's records show that she complained of kidney and leg pain, and has imaging to support her allegations of on-going pain.  Moreover, to support his credibility finding, the ALJ stated that plaintiff's medical evidence showed notations of her "doing fine."  (Tr. 16).  According to plaintiff, to determine that plaintiff is not in pain and can perform work at the light level because of a few positive medical notations is

6

erroneous and fails to take all of plaintiff's impairments and supporting records into consideration. (Tr. 16-17). Further, plaintiff followed the prescribed treatment of her physician in an attempt to relieve her pain. These treatment records further document plaintiff's reported physical limitations as a result of her ongoing back pain. Plaintiff complained of regular kidney pain and was treated throughout the relevant period for her kidney impairments. In addition to her noted pain complaints, her records also contain diagnostic imaging that provides explanation for her kidney pain. As her medical records reveal, even prior to her onset date of disability, plaintiff complained on August 4, 2006 with complaints of recurrent urinary infections and renal stones. (Tr. 209). In order to determine the cause of her on-going pain, plaintiff underwent imaging studies on September 4, 2006, which revealed that plaintiff's kidneys contained multiple irregular calcifications (about 10) and that there was a suggestion of possible staghorn calculus. (Tr. 443). Further, plaintiff's left kidney also had a small calculus. (Tr. 444). On determination of the cause of her pain, plaintiff continued to treat for her symptoms following these studies without relief. On January 7, 2009, in conjunction with her amended onset date of disability, plaintiff complained of pain that felt like she was passing kidney stones. (Tr. 208). Shortly thereafter, plaintiff underwent a CT of her abdomen that showed no new significant findings. (Tr. 228). A report on February 16, 2009 noted that plaintiff suffered with a long

history of nephrolithiasis, recurrent kidney stones, and several calcifications in her pelvis. (Tr. 207). Plaintiff was seen again on March 31, 2009 for more kidney-related pain. (Tr. 206). It was determined that plaintiff was passing uric acid stones, had continued kidney problems, and had consistent right flank pain. (Tr. 206). According to plaintiff, the medical records in this case show that plaintiff continued to treat in an attempt to relieve her ongoing, severe pain. However, despite these records, and imaging in support of her subjective complaints, plaintiff says the ALJ erroneously found that she was not entirely credible in his decision. (Tr. 16).

Furthermore, plaintiff points out that her treating physician has provided care for the duration of the relevant period in this case. Despite on-going treatment, plaintiff's doctor noted that she was still unable to meet the demand of competitive work due to her kidney impairments and varicose veins. Plaintiff's treating physician submitted a Residual Functional Capacity Questionnaire on July 2, 2012. Plaintiff's doctor listed her symptoms as: shortness of breath, lower back pain, leg pain, numbness in hands and feet, and leg swelling. (Tr. 395). As a result of these symptoms, plaintiff's medical provider noted that she was unable to stand or walk for any period of time and was even incapable of "low stress" jobs. (Tr. 396). Additionally, as a result of plaintiff's vein impairments, she would need to take unscheduled breaks and elevate her legs at least to hip level. (Tr. 396).

8

According to plaintiff, when assessing her credibility, the ALJ failed to properly

consider her physician's opinion and limitations caused as a result of her on-going

back and leg pain.  Plaintiff also argues that her treatment records provide

objective findings through diagnostic testing, which are then corroborated with her

regular complaints to her treatment providers, her daily activities, and her

testimony at the hearing.  As such, plaintiff contends that the ALJ's decision

should be reversed or remanded.

     C.     <u>The Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, as the ALJ found, the evidence in the

record does not support plaintiff's claim of disability during the period at issue –

February 2007 through December 2008.  (Tr. 16-17 (describing the evidence as

"scant" and noting that it "do[es] not include any hospital or emergency treatment,

nor any meaningful physical examinations")).  The Commissioner maintains that

this is fatal to her claim.  *See Isaac v. Comm'r of Social Sec.*, 2013 WL 4042617,

at *11 (E.D. Mich. 2013) (rejecting claimant's argument that there was no

evidence supporting ALJ's RFC because there was no medical evidence that

claimant's impairments affected her ability to work, and noting that claimant bore

the burden to prove impaired function).

Apart from a few visits to a primary care facility (Tr. 322-337) and a pelvic

ultrasound conducted in July 2007 (Tr. 425), which do not reveal any information

2:14-cv-12274-AJT-MJH   Doc # 24   Filed 07/14/15   Pg 10 of 35   Pg ID 613

regarding plaintiff's RFC, the Commissioner contends that there are no additional records from the relevant period.  Further, in the most recent treatment note before the alleged onset date, plaintiff reported feeling better and having "no pain or discomfort."  (Tr. 209).  According to the Commissioner, that she did not again seek any significant medical treatment between then and December 2008, when her insured status expired, strongly suggests that her medical condition during the period at issue did not affect her RFC to the extent she claimed.  *See Isaac*, 2013 WL 4042617, at *11.

Despite the above, plaintiff argues that additional RFC restrictions apart from those the ALJ assessed were warranted as a result of her renal condition, obesity and varicose veins.  However, the Commissioner asserts that since there is no evidence to support her claim during the period at issue, she relies only on evidence that either pre-dates or post-dates this period.  *See id*.  As such, the Commissioner asserts that her claim should be rejected.

The Commissioner also urges the Court to reject plaintiff's claims that the credibility analysis was flawed.  While plaintiff claims that the ALJ incorrectly relied on the lack of objective medical findings "despite the volume of medical appointments [and] records that show that she complained of kidney and leg pain, and has imaging to support her allegations of ongoing pain," the Commissioner maintains that these "voluminous" medical records plaintiff cites do not relate to

the relevant period.  Instead, according to the Commissioner, the record is devoid

of any significant medical treatment between February 2007 and December 2008.

Under these circumstances, the Commissioner asserts that the ALJ was entitled to

rely on the lack of medical records supporting plaintiff's claim to find that her

allegations of disability during this period were not fully credible.  *See* Social

Security Ruling (SSR) 96-7p ("the individual's statements may be less credible if

the level or frequency of treatment is inconsistent with the level of complaints").

Next, plaintiff faults the ALJ for relying on statements in her medical

records that she was doing well and feeling fine.  According to the Commissioner,

the ALJ did not place any undue emphasis on these statements, as plaintiff claims;

rather, the ALJ mentioned these statements in his decision merely as part of his

description of the evidence.  (Tr. 16).  The ALJ's decision instead makes clear that

he relied on the absence of evidence supporting a finding of disability during the

period under review.  (*See* Tr. 16-17, concluding, for example, that "[i]n sum,

there is not sufficient medical evidence of record to establish disability prior to the

date last insured of December 31, 2008. Claimant may meet [the] disability criteria

now, but she did not as of the date last insured.").

Lastly, plaintiff cites the opinion that one of her doctors completed in July

2012 – more than three years after her insured status expired – as part of her

recitation of the medical evidence she claims supports her credibility.  The

11

Commissioner maintains, however, that there is no indication that the limitations identified in the opinion existed on or before plaintiff's date last insured of December 2008. (Tr. 395-398). Further, to the extent that the opinion may be construed as relating to this period, the Commissioner asserts that the ALJ reasonably concluded that it was unsupported by the lack of medical evidence in the record supporting a finding of disability between February 2007 and December 2008. (Tr. 16). *See Bogle v. Sullivan*, 998 F.2d 342, 347-348 (6th Cir. 1993) ("[t]his court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an

12

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted);

13

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

15

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial

16

gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

In this case, the single decisionmaker ("SDM") model was used pursuant to 20 C.F.R. §§ 404.1406(b)(2), 404.906(b)(2).[2]  (Dkt. 12-3, Pg ID 123-129; Dkt. 12-3, Pg ID 130).  This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants.  The "single decisionmaker model" was an experimental modification of the disability

---

[2]  The Court raises this issue *sua sponte*, given the serious nature of the error and the pattern of repetition of this same error since the implementation of the single decision-maker model in Michigan. Notably, in Social Security cases, the failure to submit a particular legal argument is "not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua sponte*, that grounds exist for reversal. *Reed v. Comm'r of Soc. Sec.*, 2012 WL 6763912, at *5 (E.D. Mich. 2012), citing *Wright v. Comm'r of Soc. Sec.*, 2010 WL 5420990, at *1-3 (E.D. Mich. 2010), *adopted by* 2013 WL 53855 (E.D. Mich. 2013); *see also Buhl v. Comm'r of Soc. Sec.*, 2013 WL 878772, at *7 n. 5 (E.D. Mich. 2013) (plaintiff's failure to raise argument did not prevent the Court from identifying error based on its own review of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. 2013).

determination process that happens to have been used in Michigan.  *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011), *adopted by* 2011 WL 4062047 (E.D. Mich. 2011).  This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id*.  Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants.  *Id*., citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2).  The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels."  POMS DI § 24510.05.  Plaintiff's physical impairments were evaluated by an SDM, Catherine M. Schneider, who apparently concluded that plaintiff's impairments were not disabling.  (Dkt. 12-3, Pg ID 123-129).  Thus, no medical opinion was obtained at this level of review, in accordance with this model.

While the ALJ did not rely on the opinion of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand.  As set forth in *Stratton v. Astrue*, — F. Supp.2d —; 2012 WL 1852084, *11-12 (D.N.H. May 11, 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician* (or psychologist) designated by the Commissioner *on the issue of equivalence on the evidence* before the administrative law judge ... *must be received into the record as expert opinion evidence and given appropriate weight*.

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter. *Id.* at *12,

20

citing *Galloway v. Astrue*, 2008 WL 8053508, at \*5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted).  This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form.  *Stratton*, at \*12, citing SSR 96-6p, 1996 WL 374180, at \*3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at \*3 (D. Me. Mar. 6, 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."), *adopted by* 2006 WL 839494 (D. Me. Mar. 30, 2006).  There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments in this record.  (Dkt. 12-3, Pg ID 123-129; Dkt. 12-3, Pg ID 130).

The great weight of authority[3] holds that a record lacking any medical

---

[3]  In *Stratton*, the court noted that a decision from Maine "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id*., citing *Goupil v. Barnhart*, 2003 WL 22466164,

advisor opinion on equivalency requires a remand.  *Stratton*, at *13 (collecting

cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. Apr. 14,

2010) (directing ALJ to obtain expert-opinion evidence on equivalence where

none was in the record), *adopted by* 2010 WL 2103637 (W.D. Wash. 2010);

*Wadsworth v. Astrue*, 2008 WL 2857326, at *7 (S.D. Ind. 2008) (holding that

where record included no expert-opinion evidence on equivalence, "[t]he ALJ

erred in not seeking the opinion of a medical advisor as to whether Mr.

Wadsworth's impairments equaled a listing").  While the government has argued

in other cases that courts in this district have concluded that the ALJ need not

obtain expert opinion evidence in cases involving an SDM, *see Gallagher v.

Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011), *adopted by* 2011 WL 3841629

(E.D. Mich. Aug. 30, 2011), and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich.

2011), *adopted by* 2011 WL 845950 (E.D. Mich. 2011), the undersigned does not

find these cases persuasive.  In both cases, the court concluded that because the

regulations permitted an SDM to make a disability determination without a

medical consultant that the ALJ is, therefore, also permitted to do so where the

"single decisionmaker" model is in use.  Nothing about the SDM model changes

the ALJ's obligations in the equivalency analysis.  *See Barnett v. Barnhart*, 381

F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing

---

at *2 n. 3 (D. Me. 2003).

is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).  Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used.  While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases.  Thus, the undersigned's analysis does not alter the SDM model, which leaves *the SDM discretion* as to whether a medical expert is consulted as to physical impairments.  Rather, the undersigned's analysis leaves intact the requirements imposed *on an ALJ* in making an equivalency determination, which do not otherwise appear to be modified by the SDM model.  *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated).

Significantly, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. 2012). For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments. In the view of the undersigned, given that the opinions of a medical advisor must be obtained, plaintiff's credibility will necessarily have to be re-assessed in full after such an opinion is obtained.

A related problem in this case is the ALJ's RFC determination. As noted above, only the SDM completed a physical RFC assessment of plaintiff and no consulting physician examined plaintiff or offered an opinion of plaintiff's RFC. The only "work function" assessment in the record was completed by plaintiff's treating physician, Dr. Craig Everingham. (Dkt. 12-8, Pg ID 445-448). Dr. Everingham concluded, in a statement dated July 12, 2012, that plaintiff needed to elevate her legs and could not sit or stand/walk more than two hours in an eight hour work day. *Id*. The ALJ did not give controlling weight to Dr. Everingham's assessment, finding "that there are minimal notes during the period of time until her last date insured, none which indicate limitations to this degree or that would limit her being [sic] the restrictions in the residual functional capacity." (Dkt. 12-

24

2, Pg ID 60).  The ALJ, therefore, apparently arrived at his RFC based on his own analysis of the medical evidence in the record, given that there are no other medical opinions in the record.

Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).  Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008) ("The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.").  In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D.

25

Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'") (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008)); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

The undersigned is also not convinced that Dr. Everingham's opinions

should be dismissed because they may be retrospective in nature.  Merely because

a medical opinion is "retrospective," it is not deficient and may be entitled to the

same deference given to all treating physician opinions.  This is not a case where a

treating physician who did not treat the claimant during the time period in question

is offering such a retrospective opinion.  *See e.g.*, *Wladysiak v. Comm'r of Soc.

Sec.*, 2013 WL 2480665, at *11 (E.D. Mich. 2013), citing *Lancaster v. Astrue*,

2009 WL 1851407, at *11 (M.D. Tenn. 2009) ("[A] retrospective diagnosis

relating back to the insured period may be considered proof of disability only if it

is corroborated by evidence contemporaneous with the eligible period.");

*Clendening v. Astrue*, 2011 WL 1130448, *5 (N.D. Ohio 2011) (retrospective

opinions not entitled to deference where treating physician had no first-hand

knowledge of the claimant's condition prior to the last date insured.), *aff'd*, 482

Fed. Appx. 93 (6th Cir. 2012).  Rather, Dr. Everingham was plaintiff's treating

physician before, during, and after the relevant time period, and thus has first-hand

knowledge of plaintiff's condition prior to her date last insured. And, it is not clear

from the opinion itself what time period it was intended to cover.  Generally, post-

insured status evidence of a claimant's condition is not relevant.  *Bagby v. Harris*,

650 F.2d 836 (6th Cir. 1981); *see also Bogle v. Sec'y of Health and Hum. Serv.*,

998 F.2d 342 (6th Cir. 1993).  However, such evidence will be considered if it

establishes that an impairment existed continuously and in the same degree from

27

the date the insured status expired. *Johnson v. Sec'y of Health and Hum. Serv.*, 679 F.2d 605 (6th Cir. 1982).  Given that Dr. Everingham treated plaintiff for many years, before and after the insured period, the ALJ did not give due consideration to Dr. Everingham's opinions and the trajectory of plaintiff's medical records.

The ALJ concluded that the notes from the period in time at issue did not support the opinions, but as noted by plaintiff, most of these notes were entirely illegible.  The Social Security Administration regulation details how to satisfy this requirement for resolving medical record ambiguities:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning

28

> your medical source. In every instance where medical
> evidence is obtained over the telephone, the telephone
> report will be sent to the source for review, signature and
> return.

20 C.F.R. § 404.1512(e)(1); *see e.g.*, *Rogers v. Astrue*, 2011 WL 4479524 (E.D.

Tenn. 2011) (where treating physician's notes are illegible, seeking a supplemental

evaluation from the treating physician was deemed to satisfy the "recontacting"

requirement); *see also* 20 C.F.R. § 404.1527(c); *Sims v. Apfel*, 530 U.S. 103,

110-111 (2000) (The ALJ has a duty to investigate the facts and develop the

arguments both for and against granting benefits.); *D'Angelo v. Soc. Sec. Comm'r*,

475 F.Supp.2d 716 (W.D. Mich. 2007) (Where an ALJ discounts the opinions of a

treating physician because the record includes virtually no medical records of

plaintiff's treatment with that physician, the ALJ should perform a further

investigation pursuant to SSR 96-5p.).

     The Sixth Circuit has described a two-part test from Social Security Ruling

96-5p, which parallels the requirements in § 404.1512(e).  First, the evidence in

the record must not support the treating physician's opinion.  *Ferguson v.

Comm'r*, 628 F.3d 269, 273 (6th Cir. 2010); *see also Lovelace v. Astrue*, 2011 WL

2670450 (E.D. Tenn. 2011).  Second, the ALJ must be unable to ascertain the

basis of the opinion from the evidence in the record.  *Id*.  In *Ferguson*, the Sixth

Circuit determined that the second prong of the test was not met because the ALJ

explained that the applicable physician's opinion was based on self-reported history and subjective complaints, not on objective medical evidence. *Id*. The Sixth Circuit noted that "to the extent the ALJ 'rejected' Dr. Erulkar's 'opinion of disability,' he did so not because the bases for her opinion were unclear to him, but because those bases, Ferguson's self-reported history and subjective complaints, were not supported by objective medical evidence." *Id*.

In this case, Dr. Everingham completed a Physical Residual Functional Capacity Questionnaire on July 2, 2012. (Dkt. 12-8, Pg ID 445-448). As explained above, little weight was given to this opinion. The difficulty in evaluating whether the appropriate weight was given to Dr. Everingham's opinion is that his treatment notes from the time frame at issue are largely illegible. Yet, the ALJ specifically concluded that there was no evidence in Dr. Everingham's treatment notes to support his opinions regarding plaintiff's functional limitations. The undersigned is unable to determine if those conclusions are at all accurate or supported by the record because the office notes to which the ALJ refers are largely illegible. (Dkt. 12-7, Pg ID 371-386).

The undersigned is, therefore, also concerned about how the ALJ reached the conclusion that plaintiff's complaints or symptoms and ultimately, Dr. Everingham's opinion, were unsupported in his treatment notes and records. In the view of the undersigned, without more information about the content of Dr.

30

Everingham's treatment notes, the ALJ could not have conducted the required analysis to determine whether his opinions should be given controlling weight and the undersigned is unable to determine whether those opinions were properly rejected. It certainly appears that the first prong of the *Ferguson* test is satisfied, given the ALJ's conclusion that Dr. Everingham's opinion was not supported by the record. As to the second prong, while the ALJ did not reject the opinion because he was unable to ascertain the basis of the opinion from the given, the undersigned concludes that this must be so,[4] since those notes are wholly illegible. This situation is distinguishable from that presented in *Ferguson* where the bases of the rejected treating physician opinion were, in fact, clear to the ALJ and anyone reviewing the record. This situation is also unlike that presented in *Poe v. Comm'r*, 342 Fed.Appx. 149, 156-157 (6th Cir. 2009), where the opinion at issue was contradicted by two other treating physicians. Notably, in this case, there are no other medical opinions in the record, treating or consulting.

The regulation requires the ALJ to give good reasons for the weight given to the treating source's opinion and, if this procedural requirement is not met, a remand may be required even if the decision is otherwise supported by substantial evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004).

---

[4] Given the ALJ's rejection of the opinion because Dr. Everingham's notes did not support the opinions between the alleged onset date and the last date insured, the ALJ must have also concluded that the opinion included the time frame at issue.

Here the ALJ discounted the opinions of plaintiff's primary treating physician, and on its face, the ALJ's conclusions, if accurate, support the rejection of Dr. Everingham's opinions. However, as set forth above, there is simply no way for the undersigned to evaluate whether the ALJ correctly analyzed Dr. Everingham's records because they are illegible. While the plaintiff bears the burden of establishing disability, the ALJ also has a duty to fully develop the record. *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits); *see also*, *Miller v. Heckler*, 756 F.2d 679 680-81 (8th Cir. 1985) (illegibility of important evidentiary material can warrant a remand for clarification and supplementation.); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) (illegible medical reports provide reviewing court with no way to determine whether the Secretary fully understood the medical evidence before him). Under these circumstances, a remand to supplement and clarify Dr. Everingham's treatment notes and opinions is warranted and appropriate.

Based on the foregoing, the undersigned concludes that substantial evidence does not exist on the record to support the current RFC determination. The only functional limitations in the record are those found in Dr. Everingham's records, which the ALJ discredits, finding them inconsistent with the medical evidence during the period at issue. There is no RFC determination by a consulting

32

physician.  Thus, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on his own independent medical findings.  Under these circumstances, and given that the matter will be remanded for absence of a medical opinion on equivalence, the undersigned suggests that a remand is necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity finding and to clarify Dr. Everingham's records and opinions.  Again, after all of the medical opinions are obtained and updated, the ALJ will necessarily have to re-evaluate plaintiff's credibility.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

33

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 14, 2015                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

34

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>July 14, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood_____
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov