UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA TERRY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

Case No. 14-12274

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MICHAEL HLUCHANIUK

**ORDER ADOPTING REPORT AND RECOMMENDATION [24], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [21], DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23], AND OVERRULING DEFENDANT'S OBJECTION [25]; AND REMANDING CASE**

On July 14, 2015, Magistrate Judge Hluchaniuk issued a Report and Recommendation ("R&R") [24] recommending that Plaintiff's Motion for Summary Judgment [21] be granted and that Defendant's Motion for Summary Judgment [23] be denied. Defendant filed an Objection [25] on July 15, 2015. For the reasons stated below, the R&R [24] is **ADOPTED** and is entered as the findings and conclusions of the Court. Plaintiff's Motion for Summary Judgment [21] is **GRANTED**. Defendant's Motion for Summary Judgment [23] is

1

**DENIED**. Defendant's Objection [25] is **OVERRULED**. The case is **REMANDED** for further proceedings.

## STATEMENT OF FACTS

Plaintiff applied for disability benefits on September 14, 2011, alleging that disability began on September 12, 2003. The Magistrate Judge summarized the administrative record of Plaintiff's disability application as follows:

> Plaintiff was born in 1962 and was 46 years of age on the late date insured of December 31, 2008. (Dkt. 12-2, Pg ID 61, 57). Plaintiff's past relevant work included work as a housekeeping manager, which was semi-skilled and performed at the light exertional level. (Dkt. 12-2, Pg ID 61)…
>
> Plaintiff's medical evidence shows a long history of kidney impairments, with associated pain. Plaintiff's medical records before and after her onset date of disability, reveal painful kidney problems including passing kidney stones and uric acid. Despite on-going treatment, these impairments did not resolve and she complained of regular flank pain. After ongoing complaints of kidney pain, plaintiff underwent imaging studies on September 4, 2006. This revealed that plaintiff's kidneys contained multiple irregular calcifications (about 10) and there was a suggestion of possible staghorn calculus. (Tr. 443). Further, plaintiff's left kidney also had a small calculus. (Tr. 444). Plaintiff continued to treat for her symptoms following these studies without relief. On January 7, 2009, in conjunction with her amended onset date of disability, plaintiff complained of pain that felt like she was passing kidney stones. (Tr. 208). Shortly thereafter, plaintiff underwent a CT of her abdomen that showed no new significant findings. (Tr. 228). A report on February 16, 2009 noted that plaintiff suffered with a long history of nephrolithiasis, recurrent kidney stones, and several calcifications in her pelvis. (Tr. 207). Plaintiff was seen again on March 31, 2009 for more kidney-related pain. (Tr. 206). It was determined that plaintiff was passing uric acid stones, had continued kidney problems, and had consistent right flank pain. (Tr. 206). In addition to per painful kidney impairments, plaintiff also suffers from varicose veins in her legs, which cause ongoing pain, and

obesity. As her medical records reveal, and as her doctor noted, plaintiff's varicose veins cause on-going swelling and pain in her legs. (Tr. 395). As a result, she is forced to rest and elevate her legs to hip level. (Tr. 397). Moreover, according to plaintiff's treating physician, she is unable to sit or stand for more than 2 hours in an 8-hour day and would need to take unscheduled breaks. (Tr. 397-398). As a result of these limitations, plaintiff says she is unable to perform work at the "light" exertional level – even with the additional limitations imposed by the ALJ in this case.

According to the Magistrate's Report and Recommendation, at the Administrative Hearing, the ALJ made the following determinations regarding her Social Security claim:

> The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Dkt. 12-2, Pg ID 57). At step two, the ALJ found that plaintiff's history of kidney stones, varicose veins, and obesity were "severe" within the meaning of the second sequential step. (Dkt. 12-2, Pg ID 57). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 12-2, Pg ID 57-58). The ALJ concluded that plaintiff had the following residual functional capacity:
>
>> After careful consideration of the entire record, the undersigned finds that, through the date last insured, Claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she requires a sit/stand option after 20 minutes; can occasionally climb, balance, stoop, kneel, crouch, or crawl, but can never climb ladders; and must avoid all exposure to unprotected heights or moving machinery. (Dkt. 12-2, Pg ID 58). At step four, the ALJ found that plaintiff could not perform her past relevant work. (Dkt. 12-2, Pg ID 61). At step five, the ALJ denied plaintiff benefits because she could perform a significant number of jobs available in the national economy. (Dkt. 12-2, Pg ID 61).

On November 29, 2012, the ALJ denied Plaintiff's application for disability benefits, finding her not disabled at any time during the period from September 12, 2003 through December 31, 2008, the date last insured. The Appeals Council denied Plaintiff's request for review on April 3, 2014. On June 9, 2014, Plaintiff filed the instant suit for judicial review of the ALJ's decision.

## STANDARD OF REVIEW

This Court reviews objections to an R&R on a dispositive motion *de novo*. *See* 28 U.S.C. § 636(b)(1)(c). Judicial review of a decision by an Administrative Law Judge ("ALJ") is limited to determining whether the factual findings are supported by substantial evidence and whether the ALJ employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's factual findings "are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard "does not permit a selective reading of the record," as the reviewing court's assessment of the evidence supporting the ALJ's

findings "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984).

## ANALYSIS

Defendant raises two objections to the R&R [24]. First, Defendant argues that the Magistrate Judge erred in finding *sua sponte* that the ALJ was required to obtain a medical opinion that addressed the medical equivalence during the Step Three determination of the disability in the single decision making model employed during the hearing. Secondly, Defendant argues that the Magistrate Judge erred in necessitating remand due to the ALJ's evaluation of Plaintiff's medical opinion by their personal doctor, Dr. Everingham, during the RFC stage of analysis.

### I. Objection One: ALJ not required to obtain a medical opinion addressing medical equivalence at Step Three

Step three of the disability analysis undergone at Social Security hearings, the medical severity of a claimant's impairment(s) are considered to determine whether they meet or equal "one of the impairments listed in the regulations," thus qualifying claimant to be "presumed disabled." 20. C.F.R. §§ 404.1520, 416.920. Defendant objects to the Magistrate's *sua sponte* determination the ALJ in this case was required to obtain a medical opinion addressing medical equivalence

5

under step three to make a valid determination on disability status of the claimant. Defendant argues that case law and regulations clearly place the burden of proof at step three at the feet of the plaintiff, not the Commissioner, and thus it is the responsibility of the Plaintiff to provide adequate medical records to make a determination of equivalency at step three. Defendant claims that Plaintiff does not meet this requirement since she did not show that impairments either met or equaled a listing in the regulations to qualify as a disability.

The Magistrate Judge points out that the single decision-maker model (SDM) was used in this case pursuant to 20 C.F.R. §§ 404.1406, 404.906(b)(2). Under this model, the reconsideration level of review is eliminated and claims are thus allowed to go straight from initial denial to the ALJ hearing. *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011), *adopted by* 2011 WL 4062047 (E.D. Mich. 2011). Significantly for this case, the SDM can, under 20 C.F.R. §§ 404.906(b)(2) and 416.1406(b)(2), render an initial denial of a claim to benefit without any medical opinions from the state agency medical consultants. *Id.* Thus, in this case, the only state review and evaluation of Plaintiff's medical ailments were done by the SDM, and not by any medical consultant. This means that the ALJ, while not relying on only the SDM's views in his step three analysis, did not have a medical opinion that addressed the issue of equivalence to rely on. The

Magistrate Judge concluded that the ALJ erred by not obtaining a medical opinion at step three of the disability analysis. The R&R concludes that Social Security Ruling (SSR) 96-6p dictates that ALJs should not make a step three determination without any medical opinion, and states that:

> longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight. SSR 96-6P (S.S.A. July 2, 1996).

The Magistrate Judge points out that in this case, the ALJ did not have any medical opinion on equivilancy. Thus, when the ALJ made their determination that Plaintiff's severe medical impairments did not meet the standard of being disabled, he was missing the requiste medical knowledge to make the determination.

The Court agrees with the Magistrate's recommendation regarding this issue. The bulk of authority on this issue supports the Magistrate Judge's recommendation that at the hearing level, medical opinion on the issue of equivalence is required under SSR 96-6p. *See e.g. Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.1995); *Harris v. Comm'r of Soc. Sec.*, No. 12-10387, 2013 WL 1192301, at *6-8 (E.D. Mich. Mar. 22, 2013); *Willette v. Comm'r of Soc. Sec.*, No. 14-11637, 2015 WL 5559833, at *17-18 (E.D. Mich. Aug. 24, 2015) report and recommendation adopted, No. 14-11637, 2015 WL 5545718

(E.D. Mich. Sept. 18, 2015); *Stratton v. Astrue,* —— F.Supp.2d ——, 2012 WL 1852084 (D.N.H.2012); *Barnett v. Barnhart,* 381 F.3d 664, 670 (7th Cir.2004); *Modjewski v. Astrue,* No. 11–C–8, 2011 WL 4841091 (E.D.Wis. Oct.12, 2011).

Similarly, while the SDM model does not necessitate a medical opinion on equivalency to make a determination under the applicable regulations, this has been held to not affect the SSR 96-6p's applicability on ALJ hearings, and thus the requirements regarding ALJs and equivalency decisions are not impacted by the SDM model. *See e.g. Leverette v. Comm'r of Soc. Sec.,* No. 10–10795, 2011 WL 4062380, at *2; *Harris v. Comm'r of Soc. Sec.*, No. 12-10387, 2013 WL 1192301, at *6-8; *Willette v. Comm'r of Soc. Sec.*, No. 14-11637, 2015 WL 5559833, at *17-18 (E.D. Mich. Aug. 24, 2015) report and recommendation adopted, No. 14-11637, 2015 WL 5545718 (E.D. Mich. Sept. 18, 2015). This means that, despite the facts that Plaintiffs bear a burden of proof on step three according to regulations, ALJs also have an obligation under regulation and case law to consult a medical opinion on the issue of medical equivalency. Therefore, by making an equivalency determination at step three without any medical opinion, the ALJ did not follow the requirement for a step three determination at a hearing according to SSR 96-6p, and as such the case should be remanded to obtain a medical opinion with which to assist in the equivalency determination.

8

## II. Objection Two: Remand is not necessary based on the ALJ's evaluation of Dr. Everingham's opinion at the RFC stage

Defendant objects to the Magistrates finding that the ALJ's residual functional capacity (RFC) determination was improper because they did not give adequate weight to the medical evaluation done by the Plaintiff's personal doctor Dr. Everingham. Defendant argues that the doctor's evaluation was discounted in the analysis only for the reason that the evaluation was done more than three years after the Plaintiff's insured status had expired, and the evaluation was not identified as being retroactive. Therefore, the Defendant argues that the ALJ correctly recognized the medical evaluation as being irrelevant to Plaintiff's case, and thus the discounting of the evaluation should not require remand. Additionally, Defendant argues that the illegibility of the notes is not a point at issue because the evaluation was given little weight by the ALJ because the evaluation was not retroactive and contains few notes relevant to the time at issue in the claim, and that the relevant notes do not identify limitations to the degree of disability. When the ALJ weighed the scant medical evidence and the subjective statements from Plaintiff, the ALJ determined that the Plaintiff was not credible and thus denied benefits.

The Magistrate Judge concluded that the ALJ did not give controlling weight to Plaintiff's doctor's assessment, the one medical opinion on the record, and thus the ALJ arrived at the RFC determination based on his own lay analysis of the medical evidence in record without the benefit of a physician's evaluation of the evidence. This type of decision-making is not permitted. ALJs are not medically trained, and they must take care not to substitute their untrained judgment "for that of the treating physician where the treating physician is supported by the medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009). By discounting Plaintiff's treating physician's RFC assessment, and asserting that the records during the time at issue for the disability claim are scarce, the R&R finds that the ALJ was, consequently, making an RFC determination based (at least in part) on a lack of medical evidence, and consequently formulated on his own medical findings, which is not permitted in the Sixth Circuit. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009), citing *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir.2006).

The Court agrees with the Magistrate's Judge assessment regarding the need to update and obtain sufficient medical RFC assessments in order to reevaluate Plaintiff's credibility. As pointed out in the administrative ruling, the ALJ

determined that the medical evidence from the time at issue was "scant" and did not include:

> any hospital or emergency treatment, nor any meaningful physical examinations that would reveal her level of functioning or support limitations beyond those in the RFC…evidence during that time period is void of any diagnostic test, other than laboratory results…that are irrelevant to her allegations or this decision. [12-2 at 16].

Thus, not only was the ALJ lacking a sufficient treating physician statement, but he was also lacking sufficient objective medical evidence during the time in question. This means that the ALJ was not able to fully evaluate the claimant's disability claim and credibility under the guidance given by 20 C.F.R. §§ 404.1527(d), 416.927(d).

Under 20 C.F.R. § 404.1520(b)(c), there is an obligation to consult a treating physician if there is "insufficient evidence to determine" if a claimant is disabled. 20 C.F.R. § 404.1520(b)(e)(1). In the Sixth Circuit, there is a two pronged test must be met to trigger a duty to recontact a treating physician that parallels this regulation. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, FN 2 (6th Cir. 2010). First, the evidence in record must not support the treating physician's opinion, secondly, the ALJ must not being able to ascertain the basis of the opinion from the evidence in record. *Id* at 273.

11

In this case, the first prong is obviously met because of the ALJ's conclusion that the treating physician's statement was not supported by the record. Under the second prong, given the lack of apparent objective relevant medical evidence from either the treating physician or other medical records for the time at issue, the ALJ was limited to his own lay expertise and subjective comments from the Plaintiff to determine the RFC and the issue of Plaintiff's credibility. This lack of medical evidence created an ambiguity in the record, where subjective evidence from the claimant could not be either supported or attacked through objective medical evidence or her treating physician. Rather, the break in the record of medical treatment was called attention to by the ALJ to attack the credibility of the claimant. Because the ALJ already had a statement from the physician that was treating the Plaintiff during the period of time at issue for disability, but was lacking information from that physician regarding that time period, it would have been easy to contact the treating physician to resolve this medical record ambiguity, and the case should be remanded to obtain relevant and sufficient medical record to re-evaluate Plaintiff's credibility. On remand an updated medical opinion from Plaintiff's treating physician should be obtained so that there is objective medical evidence from the claim time at issue from which to adequately

assess the credibility of Plaintiff's subjective information from obtained about that time.

## CONCLUSION

The Court having reviewed the record in this case, the R&R [24] of the Magistrate Judge is hereby **ADOPTED** and is entered as the findings and conclusions of the Court. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [21] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [23] is **DENIED**.

**IT IS FURTHER ORDERED** that the case is **REMANDED** under Sentence Four for further proceedings so an updated medical opinion from Plaintiff's treating physician and a medical consultant opinion can be obtained so that the Step three determination and Plaintiff's credibility can be reassessed.

**SO ORDERED**.

Dated: September 28, 2015

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge